Nott, Ob. J.,
delivered tbe opinion of tbe court:
Tbe facts relating to tbe claimant’s citizenship are narrated in tbe affidavit wbicb be filed on tbe 5th May, 1895, in this case:
“My father, Augustus Trabing, came to tbe United States in 1853, affiant then being eleven years old; be resided in Baltimore for two years and then removed to Washington, D. 0. My father worked in tbe latter city for three years, and in tbe spring of 1859 moved into Montgomery County, Md., near old Clark’s Mills, and, as affiant believes, voted for Abraham Lincoln. He lived there for about one and a half years, and then two years in Howard Oouuty, Md. Shortly after tbe war broke out affiant went to Washington to work in tbe Quartermaster Department, on 21st street, near Washington Circle, where be was sworn in by taking tbe oath of allegiance to tbe United States. At various times be did guard duty in tbe forts surrounding Washington. On tbe 28th of August, 1865, be was sent as blacksmith and wagon repairer with tbe quartermaster train of 258 Government wagons to Springfield, Ill.; from there be was sent to Leavenworth, Kans., and then to Fort McPherson, now known as Cottonwood, Nebraska, on tbe Platte River. The winter of 1865 affiant spent at Camp Wheaton, on tbe Republican River, and tbe following spring, namely, of 1866, affiant returned to Nebraska and went into business on tbe Platte River, 2J miles west of Fort McPherson, running a ranch, blacksmith shop, saloon, and boarding bouse. From that time until tbe date of tbe depredation, on the 21st of April, 1868, affiant remained in tbe State of Nebraska, and was a citizen thereof. Affiant also served as deputy assessor at North Platte, Nebraska, in 1867.”
To this statement should be added the fact that on tbe 31st March, 1892, tbe claimant came into tbe District Court in tbe Territory of Wyoming to be naturalized as a citizen of tbe United States, and a decree of naturalization was entered accordingly.
The decision in the case of Boyd v. Thayer (143 U. S., 135) is one not easy of application to other cases, as is evidenced *442 by the fact that eight of the judges were equally divided iu the reasons for the decision and the ninth dissented from the conclusion.
The record in that case, when reduced to its material facts, shows that Boyd’s father, an alien, came to this country when his son was a minor, 14 years of age; that he declared his intention to become a citizen; that sufficient time remained for him to become a citizen before the relator attained his majority; that for forty-two years he voted and exercised the rights of a citizen, and that the son, the party whose citizenship was in question, had likewise exercised the rights and performed the duties of a citizen during his entire manhood. The only substantial issue in the case was whether the father became a citizen of the United States before October, 1854; that is to say, before the son attained his majority. If he did, the son thereby became a citizen.
In the present case it likewise appears that the father, an alien, came to this country in 1863, while the son was still a minor, 11 years of age; but it does not appear that the father ever declared his intention to become a citizen; and it does not appear that he was naturalized; and it does not appear to the satisfaction of the court that he exercised the right of the franchise, for the statement of the claimant that he voted is manifestly hearsay.
In other words, it appears that the claimant, like Boyd, came to this country while he was under 18 years of age; but it does not appear, as in Boyd’s Case, that the father had become a citizen and that the son also exercised the rights of a citizen by voting. On the contrary, it appears that in the year 1892 he, the claimant, applied for naturalization and that a decree of naturalization was then granted him.
In the Boyd Case the Supreme Court held that the proof was sufficient to warrant a jury iu inferring that the relator’s father had become a citizen before October, 1854 — that is to say, before the relator had attained his majority. In this case we are of the opinion that the proof is not sufficient to warrant us in finding the fact that the father exercised the right of voting and the ultimate fact that he had duly become a citizen of the United States.
It is also contended on the part of the claimant that as he was living in Nebraska at the time of the admission of the.Ter *443 ritory, March 3, 1867, and was recognized as a citizen by holding office at that time, his inchoate citizenship was completed by the admission of the Territory as a State.
But the organic law under which the Territory of Nebraska was organized, Act 30th May, 1854 (10 Stat. L., 277), requires something more than residence or minority. The fifth section provides that the “right of suffrage and of holding office shall be exercised only by citizens of the United States and those who shall have declared on oath their intention to become such, and shall have taken an oath to support the Constitution of the United States.” The tenth section provides that every free white male citizen, “ and those who shall have declared on oath their intention to become such, and shall have taken an oath to support the Constitution of the United States,” shall be entitled to vote. Minority, therefore, was not equivalent to a declaration of intention. Under the naturalization laws minority excused a minor from making a declaration, but the organic law referred to contemplated an oath, an oath to support the Constitution of the United States. The claimant has failed to prove naturalization by virtue of his father’s naturalization ; and he has failed to prove that prior to the admission of the State he had taken an oath to support the Constitution of the United States. He remained, then, at the time of the admission of the Territory in the character of a resident alien. The fact that he held office proves nothing. Holding office is not the performance of a duty of citizenship in the sense of being a declaration against his own interest. A man may hold office wrongfully, and an office is regarded as a thing of profit or honor. Holding it wrongfully subjects’ one to neither pains nor penalties; voting illegally does.
A minor, says the Supreme Court in the Boyd Case, “acquires an inchoate status by the declaration of intention on the part of his parents.” But it is only an inchoate status. If he attains his majority before his father completes his naturalization, he has an election to repudiate the status and determine whether he will render allegiance to the United States or to the foreign potentate or power of the country where he was born. In this case there is nothing to evidence this election. The claimant attained his majority, but did not vote. He remained in this status until in 1892, when he applied for naturalization and obtained a decree. If he had *444 voted and held office and performed all the duties of citizenship in the active and unequivocal manner of the respondent in Boyd v. Thayer, there would be good reason to say, as his counsel says, that obtaining naturalization in 1892 was for the purpose of obtaining some precise evidence of naturalization so that his status as a citizen could not be questioned. But taken with the negative facts of this case — the facts.that he was not born a citizen of the United States, that his father was not a citizen of the United States, that his father is not shown to have become a citizen of the United States, that the claimant owed no natural allegiance to the United States, and that he apparently chose to remain a subject of a foreign power ■ after attaining his majority — it must be held that this application for naturalization was the first manifestation of an intent to become a citizen and that it negatives the presumption of an earlier election.
The defendants’ motion for a new trial is allowed.